Stanley Bradshaw v. Commissioner.
Bradshaw v. Commissioner
Docket No. 334.
United States Tax Court
1944 Tax Ct. Memo LEXIS 159; 3 T.C.M. (CCH) 780; T.C.M. (RIA) 44249; July 31, 1944
*159 Arthur H. Kent, Esq., for the petitioner. C. S. Winters, Esq., and T. M. Mather, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax against Stanley Bradshaw for the year 1940, in the sum of $1,924.45. The single issue now in controversy is whether or not a partnership agreement entered into by the petitioner, his wife, and their four minor children gave rise to a valid partnership, entitled to recognition as such for Federal income tax purposes. The petitioner concedes the property of certain other adjustments made by the respondent. Findings of Fact The petitioner is an individual residing in Cedar City, Utah. His Federal income tax return for 1940 was filed with the Collector of Internal Revenue at Salt Lake City, Utah. In 1920, the petitioner entered the automobile garage and sales agency business, operating under the name of Bradshaw Chevrolet Company, hereinafter called the Chevrolet Company. Later he started an automobile financing company, which was known as the Bradshaw Finance Company, hereinafter called the Finance Company. He has operated these two businesses in Cedar City, Utah, since 1931, *160 and has devoted all his time to their operation. The petitioner conducted the businesses as a sole proprietorship until 1937. During the early years of the business the petitioner's wife assisted him by keeping the books and sending out statements. She also did some work outside the home, consisting of teaching, giving music lessons, and playing for dances. The 8/27 337 money she received from these latter activities was not used in the business, but was used solely to help defray the household expenses. On April 30, 1937, the petitioner and his wife, Christy Bradshaw, entered into a partnership agreement, which provided that they should engage as partners in the operation of the Chevrolet Company for a period of ten years. The agreement provided that the partnership profits, after the deduction of all expenses and the petitioner's salary, should be shared equally by both, and that the profits should be divided between the partners from time to time as they should mutually agree upon. Under the agreement, the petitioner was to have the active management of the business and was to receive a salary of $200 per month as compensation for his services. It was further provided that each *161 partner should have power to bind the partnership in conducting its business and affairs, but that neither partner should incur any obligation in connection with the business in excess of $5,000 without the consent of the other. At the same time the above agreement was entered into, the petitioner executed a deed giving to his wife an undivided one-half interest in the real estate carried on the books of the Finance Company. No written partnership agreement was entered into with respect to the Finance Company. Entries were made on the books of both companies setting up a capital account for the petitioner's wife, consisting of an one-half interest in each business. The petitioner filed a gift tax return in 1938, in which he reported the transfer to his wife of a one-half interest in the Chevrolet Company and in the real estate. No tax was paid because of the specific exemption. The petitioner's wife did not file a separate income tax return prior to 1937. For the years 1937, 1938, and 1939, the petitioner and his wife filed separate returns in which each reported a gross income of one-half of the net income of the Chevrolet Company and the Finance Company, after deducting the petitioner's *162 salary of $200 per month. Partnership returns also were filed for these years. On January 2, 1940, the petitioner and his wife executed a deed of gift to their four minor children, which provided in part as follows: "WHEREAS, the parties of the first part are now engaged as partners in the operation of a general garage and finance business, including the sales and service of automobiles, under the name and style of BRADSHAW CHEVROLET COMPANY, and BRADSHAW FINANCE COMPANY, at Cedar City, Utah: "WHEREAS, the parties of the first part, each own an undivided one-half interest in said partnership; "And WHEREAS, the parties of the first part desire to assign, convey and transfer partnership interest to the parties of the second part so that each of the parties of the first part, as well as the parties of the second part, shall thereafter own an undivided one-sixth interest in the partnership. "NOW THEREFORE WITNESSETH: "That the said parties of the first part, for and in consideration of the love and affection which the said parties of the first part have and bear unto the said parties of the second part, as also for the better protection and livelihood of the said parties of the *163 second part, do by these presents each give, grant, allen and confirm unto each of the said parties of the second part and their heirs and assigns forever and absolutely an undivided one-sixth interest in the respective one-half interest of each of the parties of the first part in the partnership assets as shown on the books of the partnership December 31, 1939." On the same day, the petitioner, his wife, and their four children executed a partnership agreement covering both the Chevrolet Company and the Finance Company. This agreement provided that each of the partners had contributed an undivided one-sixth interest in the assets of the partnership as of December 31, 1939, as shown on the books of the former partnership; that the partnership should engage in a general garage business and automobile finance business; that the partners should share in the profits and losses in proportion to their respective contributions of capital; that in addition to their share of the profits, the partners should be entitled to such compensation for their respective services rendered to the partnership as might be agreed upon by the partners. The agreement further provided that the management of *164 the partnership should be vested in the petitioner, but on all questions of business management the decision of the majority of the partners should govern. Provisions were made for dissolution of the partnership. Following the execution of this agreement, investment accounts were set up on the books of the Chevrolet Company and the Finance Company, showing equal contributions to capital by the petitioner, his wife, and each of the children. The petitioner filed a gift tax return for 1940, in which he reported the transfer to the children of their interests in the businesses. The petitioner's wife and children did not render any services to the partnership businesses during the period in controversy. The petitioner has devoted all his time to their operation. The assets of the Chevrolet Company consist mainly of the usual machinery and tools necessary to the maintenance of a garage business. During the year involved it kept on hand for resale about 25 new cars and approximately 40 or 50 used cars. The number of employees varies from 20 to 45, depending on the season. The Finance Company does not maintain any employees of its own. The bookkeeper and clerk of the Chevrolet Company *165 also handle the business of the Finance Company. Separate books and records are maintained for the two businesses. In 1940, the petitioner received a salary of $2,400 from the Chevrolet Company, but received no salary from the Finance Company. On January 2, 1940, the petitioner, on behalf of the Chevrolet Company, entered into a contract with Chevrolet Motor Division of General Motors Corporation, for the sale of Chevrolet automobiles and accessories. This contract recited that the Bradshaw Chevrolet Company was an individual and was signed: "Bradshaw Chevrolet Company - By Stanley Bradshaw." On November 14, 1939, the petitioner filed an application with the Utah State Tax Commission for a license to do business for the Chevrolet Company, in which he stated that the Chevrolet Company was a partnership composed of Stanley Bradshaw and Christy Bradshaw. The net income of the Chevrolet Company for 1940, after deducting the petitioner's salary, was $2,310.28. The net income of the Finance Company for the same year was $13,790.92. Each partner's respective share of profits was credited to his or her account on the books of each company. Actual withdrawals by members of the partnership, *166 other than the petitioner, were limited to amounts necessary to pay their Federal and state personal income taxes. Withdrawals for personal living expenses of the Bradshaws and their children were charged to the drawing account of the petitioner. At the end of the year, when the accounts were closed, one-sixth of these amounts was charged to the capital account of each of the partners. A separate partnership return was filed for each company for the year 1940. The petitioner, his wife, and each of the children filed separate individual income tax returns for 1940, reporting as his or her taxable income one-sixth of the net income of each business. In addition, the petitioner reported the amount of his salary from the Chevrolet Company. The respondent determined that no partnership, in fact, existed, and that the entire income was taxable to the petitioner. Opinion ARUNDELL, Judge: The sole question before us is the determination of the validity of a family partnership created on January 2, 1940. The petitioner contends that a partnership existed between himself and his wife after April 30, 1937; that in 1940 each of them made irrevocable gifts to their children of interests in *167 the partnership business; and that after the execution of the partnership agreement on January 2, 1940, the children were bona fide members of the partnership. The respondent denies that a valid partnership was created either in 1937 or in 1940, and contends that the petitioner has at all times remained the sole owner of the two companies. It is now settled that partnerships of this nature will be sustained where it is satisfactorily shown that the husband or parent made valid, irrevocable gifts of an interest or interests in a business the income of which flows predominantly from the invested capital. These cases have been sustained upon the theory that the donees have contributed their interests in the businesses as capital to the partnership and that it is the property so conveyed which produces the income taxable to the donee. ; ; ; ; . The petitioner contends that irrevocable *168 gifts were made here in 1937 and in 1940, and that each of the donees acquired full ownership of his or her proportionate share in the business. In support of his contention he points to the deeds of gift; to the partnership agreements; to the book entries; the filing of gift tax returns; and the filing of partnership returns. It is established that compliance with the formalities prescribed by state law for organizing a partnership will not necessarily determine the validity of such a partnership for Federal income tax purposes. . It has also been held that partnerships entered into among members of a family group are subject to close scrutiny and require clear and convincing evidence to support their bona fides. , affd. . One of the essential elements of a valid gift is a clear and unmistakable intention on the part of the donor absolutely and irrevocably to divest himself of the title, dominion and control of the subject matter of the gift in praesenti. ; *169 . Applying these principles to the facts before us, it is our opinion that the petitioner's contentions cannot be sustained. The evidence as to the partnership allegedly created in 1937 is far from satisfactory. The petitioner contends that he made a gift to his wife of an undivided one-half interest in each business, and that he thereafter made her his equal partner in the operation of these businesses. There is no evidence that petitioner executed an instrument transferring to his wife any interest in the Chevrolet Company. The only evidence of a gift of any interest in the Finance Company is the testimony of the petitioner that he executed a deed giving his wife an undivided one-half interest in certain real estate carried on the books of that company. This real estate is not otherwise identified. Presumably it was an asset of the Finance Company, but nothing was shown as to what other assets this company may have had, or whether any interest in them was ever transferred to Mrs. Bradshaw. Furthermore, no written partnership agreement was made respecting the operation of the Finance Company. The agreement executed on April *170 30, 1937 provided only for the operation of the Chevrolet Company. After the formation of the alleged partnership, the petitioner remained in complete control of the business. Mrs. Bradshaw did not render any service to the partnership. It does not appear that the petitioner ever held out to the public that his wife was a partner in the Finance Company. While it is true that the application for a license for the Chevrolet Company stated that that company was a partnership, it is also true that in executing the contract with Chevrolet Motor Division of General Motors, the petitioner represented that the Chevrolet Company was an individual proprietorship. Furthermore, it was not shown that the petitioner's wife had any right to make withdrawals of partnership funds. The partnership agreement made no specific reference to drawing accounts, and it is admitted that no withdrawals were ever made by or for the petitioner's wife, except such amounts as were necessary to pay her personal income taxes. It must further be noted that although he now contends that his wife was the owner of one-half of each business after April 30, 1937, the petitioner filed a gift tax return for 1940 in which *171 he reported as a gift from him the full value of the children's purported shares in the partnership business. The evidence with respect to the children's interest in the partnership is also unsatisfactory. They did not take any active participation in the partnership affairs. They did not make any withdrawals, except for the payment of their income taxes, and there is no evidence that their shares of the partnership profits were ever set aside for them or in any way separated from the petitioner's personal funds. The petitioner, on the other hand, was apparently unrestricted as to the amount of his withdrawals. He withdrew the amount of his salary and such other sums as were necessary for personal and living expenses of the Bradshaw family. At the end of the year, these amounts were pro rated, and one-sixth thereof was charged to the account of each partner. These expenses constituted the personal obligation of the petitioner, and his action in charging them to the accounts of all the members of the family shows a lack of bona fides on the part of the petitioner, and shows too that he did not consider the other members of his family to be the true owners of their respective shares *172 of the partnership assets. The petitioner admitted at the hearing that tax saving was one of the motives prompting him to form the partnership. He testified that before the creation of the partnership in question, he talked the matter over with a revenue agent, since, as he explained it, he did not want to go to the trouble and expense of organizing the partnership unless it would be recognized for income tax purposes. A consideration of all the evidence convinces us that no true business partnership ever existed between the petitioner and the members of his family. Though they went through the forms of creating a partnership, they did not intend to, nor did they, in fact, create one. The business was as completely that of the petitioner after the creation of the alleged partnership as it had been before. At no time did he relinquish any part of his ownership and control, nor did any member of his family acquire any real interest in any part of the business. To paraphrase what was said in , there was present only a superficial arrangement whereby the petitioner undertook to make his wife and children partners in his business *173 for the obvious, if not the sole, purpose of reducing his income taxes. See, also, ; . It follows that the respondent did not err in his determination. Decision will be entered for the respondent.